# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY EDWARD BOYETT, JR., | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | CV 11-J-2452-NE |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties. This court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff is seeking a reversal or remand of a final decision of the Commissioner of Social Security. All administrative remedies have been exhausted.

### Procedural Background

The plaintiff applied for disability insurance benefits and supplemental security income due to multiple injuries from a tree falling on plaintiff's back, broken ankle, broken ribs, punctured lung and pain (R. 44, 45, 100). Plaintiff filed his application for disability insurance benefits on February 16, 2007, and an application for supplemental security income on December 11, 2006, alleging disability from December 5, 2006 (R. 84-87). His applications were initially denied May 30, 2007 (R. 68, 71-73). Plaintiff requested a hearing in front of an

administrative law judge (ALJ) which was subsequently held March 23, 2009 (R. 38-66).  The ALJ thereafter found that plaintiff was not under a disability at any time through the date of the decision (R. 22-28).  The plaintiff's request for administrative review of the ALJ's decision by the Appeals Council was denied on May 12, 2011 (R. 1-3).  Plaintiff did submit additional evidence to the Appeals Council which the Appeals Council considered new and material to the issue of plaintiff's disability.  However, the Appeals Council found that this information did not provide a basis for changing the ALJ's decision.  The Appeals Council stated:

> While this new evidence suggests that the claimant may not have the residual functional capacity to perform the full range of medium work, it would not change the [ALJ's] ultimate decision.  Notably, the evidence of record does not show a history of treatment after October 2007 for the claimant's medically determined impairments.

Thus, the ALJ'S decision became the final order of the Commissioner of Social Security.  *See* 42 U.S.C. § 405(g). This action for judicial review of the agency action followed (doc. 1).  The plaintiff argues that the ALJ's residual functional capacity findings are not based on substantial evidence (doc. 8).

This court has considered the record and the briefs of the parties.  For the reasons set forth herein, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Commissioner for further proceedings in accordance

with this Opinion.

## Factual Background

The plaintiff was born December 9, 1981, making him 27 years old at the time of his hearing (R. 43). He graduated from high school and has a few college credits. Additionally, plaintiff received some welding training while in high school (R. 43-44). Plaintiff's past work includes parachute rigger while he was in the Navy for three years, overhead door installer, and electrician's helper (R. 60, 115). According to the vocational expert (VE), none of these occupations have any transferable skills to any lighter jobs below the medium level (R. 60).

Plaintiff had been a logger for one week when he was injured, not long enough to be included as past relevant work (R. 60).

Plaintiff was cutting trees down, when a new worker on the logging job cut a tree down which landed on plaintiff's shoulders (R. 44). The tree "knocked [plaintiff] to the ground, and bounced off of [him]." *Id.* Plaintiff was unable to walk after the injury. *Id.* All he can remember is that "[he] was just laying there coughing up blood, trying to talk ... and waiting on the ambulance to come and get [him]." (R. 44) Plaintiff testified he stopped working after the accident and every day is a struggle (R. 44). When asked by the ALJ why he had not seen a doctor in a couple of years, plaintiff answered "I'm not financially able to afford them." *Id.*

Plaintiff also testified that he has not gone to the emergency room because "[he] ha[s] a lot of hospital bills on his credit report." (R. 45) Even though plaintiff was injured on the job, he did not recover anything from his employer because his employer had no Workmen's Compensation insurance, nor any homeowner's insurance to cover plaintiff's loss (R. 45). Plaintiff testified that he had a fusion of the T-8 and T-12 vertebrae. *Id.* His understanding of his surgery was "I had two crushed vertebrae. They had to remove them. The bone fragments were in my spinal cord ... They told me they had to replace my vertebrae with a metal cage ... They glue your vertebrae. They just glue them together where they don't bend anymore." (R. 46) He wears a brace. *Id.* Plaintiff has trouble walking. He can walk one-eighth of a mile (R. 47). He had to learn to walk all over again after the accident. *Id.* Plaintiff cannot sit longer than 10-15 minutes (R. 48). He sits at an angle because it relieves the pressure on his back. *Id.* When that position starts hurting he will switch to another one until "another pain starts." *Id.* Plaintiff has nothing to take for pain. *Id.* Plaintiff can stand up unassisted for 20 minutes, 30 minutes if he is leaning up against some support (R. 49, 53). He is unable to lift up his one-year-old and his three-year-old sons and can only lift five to eight pounds (R. 49-50, 53). Plaintiff cannot bend (R. 50). He has to lie down during the day to relieve his pain (R. 50-51). He lies down "10, 11 times" each day

ranging from 15 minutes to one hour (R. 51). Plaintiff is unable to do chores such as cooking other than light cooking or wash dishes without having to sit down at intervals (R. 52). Plaintiff cannot do any laundry. *Id.* Plaintiff does have a driver's license and can still drive as long as it is an automobile he does not have to bend to get into (R. 52-53). Plaintiff went through the Alabama Department of Rehabilitation Service to try to find a job, but was told he was too much of an insurance risk (R. 54). Plaintiff smokes, but his wife, who works as a grocery store manager, gets coupons at work with which she can get his cigarettes (R. 54-55). Plaintiff was in the Navy over three years, but got a discharge other then honorable because of drug abuse (R. 55). At the time of the hearing plaintiff had just found out that he was eligible for Veterans Administration health services (R. 55-56). Plaintiff does not believe he can work (R. 56).

In response to his daily activities questionnaire, plaintiff stated he needs help getting out of bed and out of chairs sometimes (R. 126). He states he is unable to lift trash bags to carry outside, unable to "drag can to road," unable to stretch over the bed to "fix cover" and has difficulty removing clothes from dryer. *Id.* His wife does all the cleaning. *Id.* Likewise, plaintiff cannot mow grass, rake, sweep sidewalks, or do any gardening (R. 128).

During the hearing, the ALJ questioned the VE about a hypothetical

individual of the age, education, prior work history, and training of plaintiff, who

> can occasionally lift and/or carry, including upward pulling, up to 50 pounds; frequently lift and/or carry, including upward pulling, of 25 pounds ... could stand and/or walk, with normal breaks, a total of about six hours in an eight hour work day ... could sit, with normal breaks, a total of about six hours in an eight hour work day ... no limitation of ability to push and/or pull, including hand or foot controls ... can frequently ... up to two-thirds of the day, climb ramps and stairs, ladders, ropes and scaffolds; balance, stoop, kneel, crouch and crawl. Hypothetical individual should avoid concentrated exposure to unprotected heights. Those are the limitations as expressed by Dr. Richard D. Carter, a non-examining consultative medical doctor, on May 30, 2007.

(R. 60-61). The VE testified that these restrictions would preclude all past relevant work (R. 61). The VE further testified that there would be work at the medium level that plaintiff could do, such as handpackager, warehouse work, and a janitor (R. 61-62). The ALJ then proceeded to ask the VE another hypothetical:

> Assume hypothetical number two. Hypothetical individual is the age, education, and prior work history and training of claimant. They (sic) hypothetical individual could occasionally lift and/or carry, including upward pulling, of 20 pounds; can frequently lift and/or carry, including upward pulling, of 10 pounds; hypothetical individual would need a sit-stand option, where hypothetical individual could stand for 10 minutes at a time, sit for 10 minutes at a time during an eight hour work day. No limitations to ability to push and pull, including upward of ... including hand controls, but would be limited in the foot control to occasionally. And occasionally ... and by occasionally, I mean up to one-third of the day ... climb ramps and stairs; should not work on ladders, ropes, or scaffolds for safety reasons; can occasionally balance, stoop, kneel, and crouch ... no crawling. There are no manipulative limitations; no visual

>limitations. Hypothetical individual should avoid exposure to extreme cold and heat vibration and unprotected heights.

(R. 62-63). The VE testified that there would be light work, such as a ticket marker, a photocopy operator, and a bagger (R. 63). In answer to plaintiff's attorney's question if an individual found it necessary to lie down during the day, due to pain, would they customarily be allowed to do that as an employee, the VE answered that if an individual needed to lie down other than on breaks or lunch time, that would preclude all work activity (R. 64). The VE also testified that if an individual needed to lie down ten to eleven times through the day, from 15 minutes to one hour, that would exceed the break periods. *Id.*

The relevant medical records contained in the file demonstrate that plaintiff underwent a left posterolateral thoracotomy with T9 to T11 fusion after laminectomy and corpectomy, placement of left subclavian 12 - French triple - lumen central venous catheter and placement of a left radial arterial line (R. 160). The same day, plaintiff underwent a T9, T10 laminectomy with T8 to T12 posterior instrumentation, posterolateral arthrodesis at T10 and T12. Reduction of kyphotic deformity (R. 163).

None of these surgeries were covered by insurance (R. 45). On January 24, 2007, plaintiff was seen in follow-up by his treating surgeon Dr. Cheng W. Tao

7

and was noted to be ambulatory, but requiring the assistance of a cane (R. 245). He was noted to be doing fairly well with the exception of back pain and was continued in a brace. *Id.*  Dr. Tao noted that he discussed with plaintiff that there was a good chance his back pain would persist due to his injury. *Id.*  On the same date, Dr. Tao opined that in his best estimation plaintiff "will not be able to be involved in any gainful employment for at least one year" (R. 244).  Dr. Tao's office inquired of plaintiff how he would pay, and Dr. Tao did not see plaintiff anymore because of plaintiff's inability to pay (R. 57).

On August 3, 2077, plaintiff was treated at North Alabama Pain Service by Dr. Mark A. Murphy (R. 274) for muscular skeletal pain, lower back pain radiating across chest, lower left extremity pain to ankle, positive to numbness on left flank. *Id.*

The record notes physical therapy, and occupational therapy with poor results and showed positive straight leg raising test. *Id.*  Plaintiff was seen by Dr. Murphy for back and left ribs pain (R. 284, 287, 290, 293).  Plaintiff stated that lying down made the pain better and bending up and down made the pain worse (R. 287, 290, 293).  Plaintiff was last seen by Dr. Murphy on October 23, 2007. During that visit plaintiff described his pain as an "8" on an average in the last month. *Id.*  Plaintiff was also seen at the Huntsville Rehabilitation Center from

November 8 to November 16, 2007, for testing and possible retraining (R. 306-312). When tested for Career Ability Placement Survey, plaintiff's manual speed and dexterity was found to be low (R. 308) During the evaluation process it was noted that plaintiff maintained good attendance and punctuality, willingly accepted assignments, worked steadily, and interacted appropriately with the evaluation staff. However, it was noted that plaintiff periodically took unscheduled breaks between tests to stand and stretch after sitting for approximately one and one-half hours. It was felt that obstacles to employment were physical limitations which include heaving lifting and carrying, climbing, sitting for extended periods, kneeling and crouching, frequent pushing and pulling, prolonged standing, excessive walking, questionable stamina and endurance, and felony charges (R. 310). He was also found to be anxious and depressed and counseling for these issues was recommended. *Id.* It was recommended that plaintiff be considered for participation in a program to address work hardening and readiness concerns. *Id.*

From a rehabilitation standpoint, it was questioned whether plaintiff could perform any work due to "questionable stamina and endurance due to disability residuals" (R. 311). Under accommodations required for training/employment, it was recommended that consideration be given to interim part-time placement in a

9

low stress, and supportive environment (R. 311).

The Appeals Council acknowledged that these limitations would prevent the plaintiff from performing medium work as found by the ALJ (R. 2).

## Standard of Review

In a Social Security case, the initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment he is unable to perform his previous work. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). If the claimant is successful, the burden shifts to the Commissioner to prove that the claimant can perform some other type of work existing in the national economy. *Id.*

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir. 1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is generally defined as "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir.

1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  This court must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards.  *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir. 1993).

However, no such presumption of correctness applies to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims.  *Brown v. Sullivan* , 921 F.2d 1233, 1235 (11th Cir. 1991); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).  The Commissioner's "failure to ... provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  *Cornelius*, 936 F.2d at 1145-1146.

It is well established that the ALJ, in making a disability determination, must consider the combined effects of all impairments.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002); *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991).  If the claimant alleges multiple impairments, the claimant may be found disabled even though no single impairment is considered disabling.  *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987).

Claimants are permitted to submit new evidence at each step of the review process, 20 C.F.R. § 404.900(b)("In each step of the review process, you may present any information you feel is helpful to your case. [W]e will consider at each step of the review process any information you present as well as all the information in our records."). The Appeals Council is required to consider the entire record, "including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b); *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994). *Dunn v. Astrue*, 660 F.Supp.2d 1290, 1294 (N.D. Ala. 2009).

## Legal Analysis

The ALJ determined the plaintiff retained the residual functioning capacity to perform medium work with an ability to frequently lift and carry up to 25 pounds and occasionally lift and carry 50 pounds. The ALJ further found that plaintiff could sit for 6 hours in an 8 hour day and stand and walk for 6 hours in an 8 hour day. The ALJ found that plaintiff would have no limitations in his ability to push and pull hand and foot controls and no limitations in balancing, stooping, crouching, and crawling. He should avoid work activity in unprotected heights (R. 25). To reach this conclusion, the ALJ disregarded portions of the medical

evidence and ignored the opinions of plaintiff's treating physician. He based his opinion on plaintiff's failure to seek additional medical treatment and by placing great weight on the state agency medical consultant's opinion along with his own "reasonable assumptions" (R. 26).

The ALJ discounted plaintiff's treating physician's opinion of January 24, 2007, that plaintiff would not be able to be involved in any gainful employment for at least a year by simply stating "there is no evidence to support continuing limitations" and by concluding that since plaintiff had sought no additional treatment or taken any types of medications for his pain, Dr. Tao's opinion is only entitled to limited weight (R. 26). In reaching his conclusion that plaintiff could perform work activity at the medium level of exertion, the ALJ gave considerable weight to the state agency medical consultant's opinion, finding that while plaintiff "clearly had an injury which resulted in significant limitations for a period of time, evidence of treatment since January of 2007 has not been found. *Id*. When evaluating an applicant's claim for social security disability benefits, the ALJ must give "substantial weight" to the opinion of the applicant's treating physician "unless good cause exists for not heeding the treating physician's diagnosis and opinion. *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004).

Here good cause is lacking. The Eleventh Circuit has defined "good cause" as: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)(quotation marks and citations omitted). *See also Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011). Should an ALJ disregard or accord less weight to the opinion of a treating physician, the ALJ must clearly articulate his reasons, and the failure to do so is reversible error. *Id.* Although the ALJ did not have the plaintiff's medical records from North Alabama Pain Service, the Appeals Council did (R. 148-150). The Appeals Council considered those records, as well as the records from Huntsville Rehabilitation Center, new and material on the issue of plaintiff's disability, and actually disagreed with the ALJ's finding that plaintiff had the residual functional capacity to perform the full range of medium work. However, the Appeals Council in a conclusory manner denied review stating that this evidence does not show a history of treatment after October 2007 of the plaintiff's medically determinable impairments (R. 2). Not only do these records corroborate the opinion of Dr. Tao that plaintiff was unable to be gainfully employed for at least a year. They also corroborate plaintiff's treating physician's

notation in his records that "there is a good chance that [plaintiff's] back pain may persist due to his injury (R. 245). The records from the Pain Service reflect that plaintiff still have pain at a level "8" and although plaintiff had tried various medications to control the pain, it persisted. As for the ALJ's conclusion that since plaintiff had not sought emergency room treatment or taken any type of medication, that as well is not supported by the evidence in the record. The state agency medical consultant's opinion, which the ALJ gave considerable weight, actually states: He [plaintiff] is compliant with taking meds" (R. 252). Plaintiff testified that he took over the counter medications (R. 44) and the Pain Service records likewise reflect that plaintiff has taken medications for his pain. Additionally, plaintiff explained that the reason he has not sought additional medical treatment and medications is because he has no money, no insurance, and cannot afford the treatment (R. 44-45, 57). In *Dawkins v. Bowen*, the Eleventh Circuit stated:

> We agree with every circuit that has considered the issue that poverty excuses noncompliance. *See, e.g., Lovelace*, 813 F.2d at 59 ("To a poor person, a medicine that he cannot afford to buy does not exist"); *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (failure to follow prescribed treatment does not preclude reaching the conclusion that a claimant is disabled when the failure is justified by lack of funds); *Dover v. Bowen*, 784 F.2d 335, 337 (8th Cir. 1986) ("the ALJ must consider a claimant's allegation that he has not sought treatment or used medications because of lack of finances"); *Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir. 1985) (inability to

afford surgery does not constitute an unjustified refusal and does not preclude recovery of disability benefits). Thus while a remediable or controllable medical condition is generally not disabling, when a "claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986) (footnote omitted).

Thus the ALJ was in error when he reached his conclusion. The ALJ's "assumption" that plaintiff could seek treatment in emergency room despite his poverty is simply unrealistic. The ALJ's additional "assumption" that plaintiff could have used the funds he spent on cigarettes for medications is likewise ludicrous (R. 76). Plaintiff testified that his wife got coupons through work and that those coupons were used to buy cigarettes (R. 54-55).

The ALJ gave the state agency medical consultant's opinion of May 30, 2007, considerable weight (R. 26). His finding 5 is verbatim the physical residual functional capacity assessment found by the state agency consultant (R. 5, 247-254).

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential process for determining disability. The opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of a treating or examining physician. *Lamb v. Bowen*, 847 F.2d 698,

703 (11th Cir. 1988).  The ALJ may, however, reject any medical opinion if the evidence supports a contrary finding.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).  Nonetheless, the ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  Without the ALJ stating the specific weight given to different medical opinions and the reasons therefor, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence.  *See e.g. Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).  Absent good cause, the opinions of treating or examining physicians must be accorded substantial or considerable weight.  *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Johnson*, 138 Fed.Appx. at 269.  Moreover, the opinions of a non-examining physician do not constitute substantial evidence when standing alone.  *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).  *Delker v. Commissioner of Social Security*, 658 F.Supp.2d 1340, 1368 (M.D. Fla. 2009).

Finally, the report from Huntsville Rehabilitation Center clearly indicates that plaintiff was not able to work at that time as it recommended as

accommodations required for training/employment that consideration be given to interim part-time placement in a low stress, and supportive environment (R. 311).

The ALJ's opinion is simply not supported by substantial evidence.

This court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord, Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability. *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). For the reasons set forth above, this case is due to be reversed.

The court finds the evidence supports a finding that plaintiff was under a disability and entitled to benefits from December 5, 2006, through the date of the hearing.

The court cannot determine from the evidence in the record whether such period of disability continues after the date of the hearing, March 23, 2009.

<u>Conclusion</u>

Thus, the decision of the ALJ is **REVERSED**. The case is **REVERSED and REMANDED** to calculate the monetary benefits to which plaintiff is entitled from December 5, 2006, through the date of the hearing, March 23, 2009. It is **FURTHER REVERSED and REMANDED** for additional proceedings to determine whether such period of disability continues as set forth above.

**DONE** this 25th day of January 2012.

*[signature]*

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE